IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

CHRISTA W.,[1]                                                  Case No. 1:22-cv-01293-SB

                 Plaintiff,                        **OPINION AND ORDER**

      v.

KILOLO KIJAKAZI, Acting Commissioner of
Social Security,

                 Defendant.

_____

**BECKERMAN, U.S. Magistrate Judge.**

      Christa W. ("Plaintiff") brings this appeal challenging the Commissioner of Social

Security's ("Commissioner") denial of her application for Supplemental Security Income ("SSI")

under Title XVI of the Social Security Act.[2] The Court has jurisdiction pursuant to 42 U.S.C.

§§ 405(g) and 1383(c), and the parties have consented to the jurisdiction of a magistrate judge

pursuant to 28 U.S.C. § 636(c). For the reasons explained below, the Court reverses the

_____

     [1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party and the non-governmental party's family members in this case.

     [2] Plaintiff's first name is listed as "Crista," not "Christa," in the transcript. (*See* Tr. 1-6, 13-23.)

Commissioner's decision because it is based on harmful legal error and not supported by substantial evidence.

## STANDARD OF REVIEW

The district court may set aside a denial of benefits only if the Commissioner's findings are "not supported by substantial evidence or based on legal error." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). Substantial evidence is defined as "more than a mere scintilla [of evidence] but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)).

The district court "cannot affirm the Commissioner's decision 'simply by isolating a specific quantum of supporting evidence.'" *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2001) (quoting *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999)). Instead, the district court must consider the entire record, weighing the evidence that both supports and detracts from the Commissioner's conclusions. *Id.* Where the record as a whole can support either the grant or denial of Social Security benefits, the district court "may not substitute [its] judgment for the [Commissioner's]." *Bray*, 554 F.3d at 1222 (quoting *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007)).

## BACKGROUND

### I.    PLAINTIFF'S APPLICATION

Plaintiff was born in January 1974, making her forty-six years old on February18, 2020, the day she protectively filed her SSI application.[3] (Tr. 13, 21, 85, 96.) Plaintiff has a tenth-grade

---

[3] "[T]he earliest an SSI claimant can obtain benefits is the month after which he filed his application[.]" *Schiller v. Colvin*, No. 1:12-cv-00771-AA, 2013 WL 3874044, at *1 n.1 (D. Or.

education and past work as a fast food worker and cashier. (*Id.* at 21, 56, 68, 251.) In her application, Plaintiff alleges disability due to "chronic pain; lower back pain; [and] hip issues." (*Id.* at 85, 96.)

The Commissioner denied Plaintiff's application initially and upon reconsideration, and on August 24, 2020, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (*Id.* at 13.) Plaintiff and an impartial vocational expert ("VE") appeared and testified at an administrative hearing held before an ALJ on June 21, 2021. (*Id.* at 31-64.) On July 30, 2021, the ALJ issued a written decision denying Plaintiff's application. (*Id.* at 13-23.) On August 1, 2022, the Appeals Council denied Plaintiff's request for review, making the ALJ's written decision the final decision of the Commissioner. (*Id.* at 1-6.) Plaintiff now seeks judicial review of that decision.

## II.    THE SEQUENTIAL PROCESS

A claimant is considered disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than [twelve] months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). Those five steps are: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the claimant can return to any past relevant work; and (5) whether the

---

July 23, 2013) (citation omitted). As a result, the ALJ considered whether Plaintiff was disabled as of February 18, 2020, the day she protectively filed her SSI application. (*See* Tr. 15, 22-23, finding that Plaintiff has not been disabled "since February 18, 2020, the date the application was filed").

claimant can perform other work that exists in significant numbers in the national economy. *Id.* at 724-25.

The claimant bears the burden of proof for the first four steps. *See Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001). If the claimant fails to meet the burden at any of those steps, the claimant is not disabled. *See id.* at 954. The Commissioner bears the burden of proof at step five, where the Commissioner must show the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett*, 180 F.3d at 1100. If the Commissioner fails to meet this burden, the claimant is disabled. *See Bustamante*, 262 F.3d at 954.

## III.    THE ALJ'S DECISION

The ALJ applied the five-step sequential evaluation process to determine if Plaintiff is disabled. (Tr. 13-23.) At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since February 18, 2020, the day she protectively filed her SSI application. (*Id.* at 16.) At step two, the ALJ determined that Plaintiff suffers from the following severe impairments: degenerative disc disease and obesity. (*Id.*) At step three, the ALJ concluded that Plaintiff did not have an impairment that meets or medically equals a listed impairment. (*Id.* at 17.)

The ALJ then found that Plaintiff had the residual functional capacity ("RFC") to perform light work, subject to these limitations: (1) Plaintiff can occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs, but never climb ladders, ropes, or scaffolds, (2) Plaintiff "requires the ability to alternate between sitting and standing at will while remaining on task," (3) Plaintiff "uses a single point cane in the left, dominant upper extremity while ambulating," and (4) Plaintiff "can frequently, but not constantly, handle and finger bilaterally."

(*Id.* at 18.) At step four, the ALJ found that Plaintiff could not perform her past work as a fast

food worker and cashier. (*Id.* at 21.) At step five, the ALJ found that Plaintiff was not disabled

because a significant number of jobs existed in the national economy that she could perform,

such as work as a production assembler, electrical accessories assembler, and electrical bench

worker. (*Id.* at 22.)

## DISCUSSION

In this appeal, Plaintiff argues that the ALJ erred in two principal ways. First, Plaintiff

argues that the ALJ erred by failing to provide legally sufficient reasons for discounting the

opinions of Plaintiff's primary care physician, Carolyn Pierce, M.D. ("Dr. Pierce"). (Pl.'s

Opening Br. ("Pl.'s Br.") at 9, 15, ECF No. 14.) Second, Plaintiff argues that the ALJ erred by

failing to provide clear and convincing reasons for discounting Plaintiff's symptom testimony.

(*Id.* at 9.)

As explained below, the Court concludes that the ALJ provided legally sufficient reasons

for discounting Dr. Pierce's opinions but failed to provide clear and convincing reasons for

discounting Plaintiff's symptom testimony. The Court therefore reverses the Commissioner's

decision.

## I.    MEDICAL OPINION EVIDENCE

### A.    Applicable Law

As the parties agree (*see* Pl.'s Br. at 16; Def.'s Br. at 8, ECF No. 17), the new regulations

apply here because Plaintiff filed her SSI application after March 27, 2017. *See Woods v.*

*Kijakazi*, 32 F.4th 785, 787-92 (9th Cir. 2022) (observing that "[t]he new regulations apply to [a

claimant's Social Security case if] she filed her claim on or after March 27, 2017," and that the

new regulations displace the "irreconcilable" and "incompatible" specific and legitimate reasons

standard); *see also Petritz v. Kijakazi*, No. 22-35155, 2022 WL 17592191, at *1 (9th Cir. 2022)

(explaining that "the standard under the new regulations . . . [did] not apply to [the claimant's] case because [he] filed his application for benefits before [March 27,] 2017" (citing *Woods*, 32 F.4th at 789)).

Under the new regulations, "'[t]he most important factors' that [an ALJ] considers when evaluating the persuasiveness of medical opinions are 'supportability' and 'consistency.'" *Woods*, 32 F.4th at 791 (quoting 20 C.F.R. § 404.1520c(a)).[4] Supportability refers to "the extent to which a medical source supports the medical opinion by explaining the 'relevant . . . objective medical evidence,'" *id.* at 791-92 (quoting 20 C.F.R. § 404.1520c(c)(1)), and consistency refers to "the extent to which a medical opinion is 'consistent . . . with the evidence from other medical sources and nonmedical sources in the claim.'" *Id.* at 792 (quoting 20 C.F.R. § 404.1520c(c)(2)). An ALJ "must 'articulate . . . how persuasive' [he] finds 'all of the medical opinions' from each doctor or other source, . . . and 'explain how [he] considered the supportability and consistency factors' in reaching [his] findings.'" *Id.* (quoting 20 C.F.R. §§ 404.1520c(b), 404.1520c(b)(2)).

The new regulations reflect that an ALJ is not required to make specific findings regarding a medical source's relationship with the claimant, i.e., "the length and purpose of the treatment relationship, the frequency of examinations, the kinds and extent of examinations that the medical source has performed or ordered from specialists, and whether the medical source has examined the claimant or merely reviewed the claimant's record." *Id.* (quoting 20 C.F.R.

---

[4] The ALJ correctly applied the new, identical regulations applicable to SSI claims, which are codified at 20 C.F.R. § 416.920c. (*See* Tr. 18); *see also Reynolds v. Kijakazi*, No. 21-35672, 2022 WL 4095381, at *1 (9th Cir. Sept. 7, 2022) (applying the new regulations in evaluating claims for disability insurance benefits and SSI (citing 20 C.F.R. § 416.920c and *Woods*, 32 F.4th at 791-92)); *Fryer v. Kijakazi*, No. 21-36004, 2022 WL 17958630, at *1 (9th Cir. Dec. 27, 2022) (noting that the new, parallel regulations for claims for disability insurance benefits and SSI are "codified at 20 C.F.R. [parts] 404 [and] 416," respectively (citing Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5844 (Jan. 18, 2017))).

§§ 404.1520c(b)(2), 404.1520c(c)(3)(i)-(v)). Nor is an ALJ required to make findings regarding

specialization or "other factors that tend to support or contradict a medical opinion[, such as the

medical source's] familiarity with the other evidence in the claim or . . . understanding

of . . . disability program[] policies and evidentiary requirements." 20 C.F.R. §§ 416.920c(b)(2),

1520c(c)(4)-(5).

     If, however, an ALJ finds that medical opinions "about the same issue are both equally

well-supported . . . and consistent with the record . . . but are not exactly the same, [the ALJ] will

articulate how [he] considered the . . . factors in paragraphs (c)(3) through (c)(5)," *id.*

§ 416.920c(b)(3), i.e., the medical source's relationship with the claimant, specialization, and

facts that support or contradict the medical opinion. *Id.* § 416.920c(c)(3)-(5); *see also Woods*, 32

F.4th at 792 (making a similar observation regarding the factors in paragraphs (c)(3) through

(c)(5)).

     A district court reviews the ALJ's evaluation of a medical opinion for substantial

evidence. *See Woods*, 32 F.4th at 787 ("Now, [under the new regulations,] an ALJ's decision,

including the decision to discredit any medical opinion, must simply be supported by substantial

evidence."); *id.* at 792 ("Even under the new regulations, an ALJ cannot reject an examining or

treating doctor's opinion as unsupported or inconsistent without providing an explanation

supported by substantial evidence."); *Metcalf v. Kijakazi*, No. 22-35201, 2022 WL 17592194, at

*1 (9th Cir. Dec. 13, 2022) (observing that "under the revised regulations . . . , the ALJ's

evaluation of a medical opinion is reviewed for substantial evidence" (citing *Woods*, 32 F.4th at

789)).

///

///

### B.    Analysis

Plaintiff argues that the ALJ failed to provide legally sufficient reasons for discounting the opinion of Plaintiff's primary care physician, Dr. Pierce. (Pl.'s Br. at 9, 15-19.) The Court disagrees.

### 1.    Dr. Pierce's Opinions

On August 26, 2020, Dr. Pierce completed a physical medical source statement. (Tr. 579-82.) Dr. Pierce explained that she treated Plaintiff one to two times per month since February 2020, Plaintiff's diagnoses include, but are not limited, lumbago with sciatica, radiculopathy, and spinal stenosis, Plaintiff's symptoms consist of pain, fatigue, muscle cramps, and depressed mood when her pain is severe, Plaintiff's prognosis was "guarded" and "pending" an updated magnetic resonance imaging ("MRI") that an orthopedic surgeon, Adam Cabalo, M.D. ("Dr. Cabalo"), ordered of her lumbar spine, Plaintiff uses a cane, and Plaintiff exhibits "obvious scoliosis," tenderness, and decreased range of motion, strength, and sensation on examination. (*Id.* at 579.)

In terms of work-related limitations, Dr. Pierce opined that (1) Plaintiff can sit and stand/walk for less than two hours during an eight-hour workday, (2) Plaintiff needs a job that permits shifting "at will from sitting, standing or walking," (3) Plaintiff would need unscheduled breaks after twenty minutes and one to two hours of rest before returning to work, (4) Plaintiff must use a cane when engaged in occasional standing and walking, (5) Plaintiff can occasionally lift and carry less than ten pounds, (6) Plaintiff can use her hands (grasp, turn, and twist objects) for no more than fifty percent of an eight-hour workday, (7) Plaintiff can reach (overhead or in front of her body) for no more than five percent of an eight-hour workday, (8) Plaintiff is capable of performing low stress work, (9) Plaintiff would be off task for at least twenty-five percent of an eight-hour workday, and (10) Plaintiff would miss an average of four or more days of work

per month. (*Id.* at 580-82.) With respect to "the earliest date" that Plaintiff's described symptoms and limitations "applie[d]," Dr. Pierce answered "approx[imately]" January 1, 2013. (*Id.* at 582) (emphasis omitted).

On May 11 and May 13, 2021, Dr. Pierce completed a second physical medical source statement. (*Id.* at 690-96.) Dr. Pierce noted that she had treated Plaintiff on a monthly basis for about a year, and Plaintiff's symptoms include pain in her back, hips, elbows, shoulders, and leg, "[e]asy fatigability," insomnia, and neuropathic pain and weakness in the left lower extremity. (*Id.* at 690.) Dr. Pierce included an attachment detailing her diagnoses, clinical findings, and objective signs that support her opinions, and Plaintiff's treatment and response. (*Id.* at 690, 694-96.)

In terms of Plaintiff's work-related limitations, Dr. Pierce opined, among other things, that (1) Plaintiff would need unscheduled breaks every hour and fifteen minutes of rest before returning to work, (2) Plaintiff did not suffer from any significant reaching (overhead or in front of her body), handling (grasp, turn, and twist objects), or fingering limitations, (3) Plaintiff is capable of performing low stress work, (4) Plaintiff would be off task for at least twenty-five percent of an eight-hour workday, and (5) Plaintiff would miss an average of four or more days of work per month. (*Id.* at 691-93.) With respect to "the earliest date" that Plaintiff's described symptoms and limitations "applie[d]," Dr. Pierce answered "2015." (*Id.* at 693) (emphasis omitted).

### 2.    The ALJ's Decision

The ALJ noted that Dr. Pierce "offered multiple opinions in the record" but found that Dr. Pierce's opinions were "not persuasive." (*Id.* at 20.) At the outset, the ALJ observed that in a treatment note dated August 26, 2020, the day Dr. Pierce completed her initial physical medical source statement, Dr. Pierce stated Plaintiff was "disabled from her pain[.]" (*Id.*, citing Tr. 662;

*id.* at 662, "Pain is severe, to the point that patient is disabled from it. Reviewed disability paperwork with her today. Will complete it and send to her attorneys, [and] will save a copy for our files."). With respect to this opinion from Dr. Pierce's August 26, 2020 treatment note, the ALJ explained that the ultimate issue of disability is a matter "reserved for the Commissioner." (*Id.* at 20.)

The ALJ then turned to Dr. Pierce's "two other statements," namely, the physical medical source statements that Dr. Pierce completed in August 2020 and May 2021. (*Id.*, citing Tr. 579-82, 690-96.) The ALJ found that Dr. Pierce's physical medical source statements were "not persuasive." (*Id.*) In so finding, the ALJ explained that there were "notable inconsistencies, including [Dr. Pierce's] finding that [Plaintiff] could perform low stress work while also advising that [Plaintiff] would be off-task and absent from work significant amounts[.]" (*Id.*) The ALJ explained that there was also an "inconsistency with regard to [Dr. Pierce's opinions as] to when [Plaintiff's] symptoms began." (*Id.*) The ALJ further explained that the "extreme limitations" Dr. Pierce identified (and the ALJ described) were "inconsistent with the record as a whole." (*Id.*) In support, the ALJ noted that Plaintiff had "work below [the level of substantial gainful activity] in 2013 and 2015," no "work would be possible with reaching limited to [five percent] of the time and four days absent from work per month," and a "finding that [Plaintiff's] symptoms stretch back to 2013 or 2015 is not supported," as the "[c]urrent medical evidence dates back only to 2019, and no basis [was] given for extending the limitations back to those dates, particularly where [Dr. Pierce] only treated [Plaintiff] beginning in 2020." (*Id.* at 20-21, citing Tr. 240-42.)

### 3.    Disposition

The Court finds that the ALJ did not commit harmful error in discounting Dr. Pierce's opinions.

"Under the revised regulations, an ALJ need only provide 'an explanation supported by substantial evidence' [for discounting a physician's opinion]." *Kitchen v. Kijakazi*, 82 F.4th 732, 740 (9th Cir. 2023) (quoting *Woods*, 32 F.4th at 792). The Supreme Court and Ninth Circuit have recognized that the threshold for substantial evidentiary sufficiency is "not high," and a district court must uphold an ALJ's conclusion if the evidence is susceptible to more than one rational interpretation. *See Ahearn v. Saul*, 988 F.3d 1111, 1115 (9th Cir. 2021) ("[T]he threshold for [substantial] evidentiary sufficiency is not high. Substantial evidence . . . is more than a mere scintilla. It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." (quoting *Biestek v. Berryhill*, 587 U.S. ---- , 139 S. Ct. 1148, 1154 (2019)); *Peebles v. Kijakazi*, No. 22-35841, 2023 WL 5567156, at *1 (9th Cir. Aug. 29, 2023) (holding that the ALJ adequately assessed the persuasiveness of medical opinions and noting that "[w]here evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld" (quoting *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005))).

Plaintiff argues that the ALJ erred by "reject[ing] Dr. Pierce's opinion statements without consideration of the factors of supportability or consistency." (Pl.'s Br. at 16.) The Court disagrees.

In *Kitchen*, the claimant similarly argued that "the ALJ failed to assess the consistency and supportability of [two physicians'] medical opinion[s]." 82 F.4th at 733. The Ninth Circuit rejected that argument, noting that "[t]he ALJ explicitly discussed the supportability and consistency of the opinions . . . by identifying medical sources and records relevant to her analysis." *Id.* at 740 n.4 (citing *Woods*, 32 F.4th at 791-92). The Ninth Circuit proceeded to explain, among other things, that the ALJ's "weighing of [one of the physician's] opinion[s] was

sufficiently articulated." *Id.* The Ninth Circuit further explained that "[u]nder the revised regulations, an ALJ need only provide 'an explanation supported by substantial evidence,'" *id.* (quoting *Woods*, 32 F.4th at 792), and that "[s]ubstantial evidence support[ed] the ALJ's finding that [the physician's] opinion regarding [the claimant's] mental impairments was not persuasive." *Id.* In so holding, the Ninth Circuit noted that the ALJ discounted the physician's opinion, in part, because it was "inconsistent with . . . [the physician's] own [findings]," and that "an ALJ may discount a doctor's opinions that are inconsistent with or unsupported by the doctor's own clinical findings." *Id.* (citing *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008)).

As in *Kitchen*, the ALJ's weighing of Dr. Pierce's opinions was sufficiently articulated. To be sure, similar to the ALJ in *Kitchen*, the ALJ here discounted Dr. Pierce's opinions, in part, because Dr. Pierce's opinions and "extreme limitations" were inconsistent with "the record as a whole" and Dr. Pierce's own findings. (Tr. 20.) An ALJ may discount a physician's opinions on the ground that they are internally inconsistent. *See Darling v. Kijakazi*, No. 22-35594, 2023 WL 4103935, at *1 (9th Cir. June 21, 2023) (holding that substantial evidence supported the ALJ's evaluations of the persuasiveness of medical opinions and "the ALJ properly considered the supportability and consistency factors under the revised regulations," stating that "[b]ased on these factors, the ALJ permissibly concluded that [a physician's] opinion was internally inconsistent," and noting that "[a]n ALJ is not required to incant the 'magic words' of 'supportability' and 'consistency' in his findings" (citing *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989))); *Metcalf v. Kijakazi*, No. 22-35201, 2022 WL 17592194, at *1 (9th Cir. Dec. 13, 2022) (applying the revised regulations on evaluating medical opinions and holding that

substantial evidence supported the ALJ's finding that a physician's opinion was "internally inconsistent").[5]

The ALJ provided a few (non-exhaustive) examples to illustrate his point, including (1) the "inconsistency with regard to [Dr. Pierce's opinions as] to when [Plaintiff's] symptoms began," i.e., approximately January 1, 2013 and 2015, and (2) the "notable" inconsistency between Dr. Pierce's "finding that [Plaintiff] could perform low stress work while also advising that [Plaintiff] would be off-task and absent from work significant amounts." (*Id.*, citing Tr. 579-82, 690-96, and referring to Tr. 582, 693; *see also id.* at 59-60, reflecting that during the hearing, the VE confirmed that Dr. Pierce's opinion on absenteeism would preclude gainful employment). Furthermore, in the paragraph preceding his assessment of Dr. Pierce's opinions, the ALJ assessed the persuasiveness of the state agency physicians' opinions, and explained, among other things, that "greater [RFC] limitations" were necessary in some respects, but the record supported the state agency physicians' opinions that Plaintiff could perform a range of light work. (*Id.*) In other words, the ALJ determined that the record evidence supported opinions that conflicted with Dr. Pierce's opinions. (*Compare id.* at 580-81, *and id.* at 691-92, *with id.* at 91, *and id.* at 104.)

In arguing that the ALJ failed adequately to address the factors of supportability and consistency, *see* 20 C.F.R. § 416.920c(c)(1)-(2), and thus erred in assessing the persuasiveness of Dr. Pierce's opinions, Plaintiff focuses on the ALJ's example about Dr. Pierce's opinions as to the earliest onset of Plaintiff's symptoms and related limitations. (*See* Pl.'s Br. at 15-18, focusing

---

[5] In *Woods*, the Ninth Circuit found that the "meaning" of the ALJ's description of the physician's opinion as "not supported by" the record was "clear from context," but added that "to avoid confusion in future cases, ALJs should endeavor to use the[] two terms of art—'consistent' and 'supported'—with precision." *Woods*, 32 F.4th at 793 n.4 (emphasis added). The Ninth Circuit, however, did not state that ALJs must use the "magic words" of "supportability" and "consistency."

on this finding from the ALJ's decision; Tr. 582, 693, reflecting that on August 26, 2020,

Dr. Pierce identified approximately January 1, 2013 as the "earliest date that [her] description of

[Plaintiff's] symptoms and limitations . . . applie[d]," but on May 11, 2021, Dr. Pierce identified

"2015" as the earliest date that her description of Plaintiff's symptoms and limitations applied).

Plaintiff argues that Dr. Pierce's "inconsistent statement" as to the temporal scope of her

symptoms and limitations is "irrelevant to [her] claim, which [she] filed [on] February 18, 2020,"

because it addresses a matter that "predate[s] the period of consideration by many years[.]" (Pl.'s

Br. at 17.)

The Court cannot conclude that such an inconsistent statement is irrelevant here, or that it

was unreasonable for the ALJ to discount Dr. Pierce's opinions in part on such grounds. Indeed,

the ALJ also emphasized that Dr. Pierce "only treated [Plaintiff] beginning in 2020," that

"[c]urrent medical evidence dates back only to 2019," that "no basis was given for extending the

limitations back to [2013 or 2015]," and that "a finding that [disabling] symptoms stretch back to

2013 or 2015 is not supported." (Tr. 21.) These reasons are supported by substantial evidence in

the record, and thus the ALJ did not err in discounting Dr. Pierce's opinions based on her

inconsistent statements as to the temporal (and pre-treatment relationship) scope of Plaintiff's

symptoms and limitations. *See Hindsman v. Kijakazi*, No. 2:22-cv-00772, 2023 WL 5334990, at

*5 (E.D. Cal. Aug. 18, 2023) ("[T]he ALJ reasonably found that [the physician's] opinion of

[the] plaintiff's functional abilities five years before he began treating her should be accorded

less weight."); *Alva v. Saul*, No. 2:19-cv-00086, 2020 WL 363787, at *5 (E.D. Cal. Jan. 22,

2020) ("[T]he ALJ properly discounted [the physician's] opinion as to [the] plaintiff's condition

in the years prior to July 2013, when [the physician] began treating her."); *Vincent v. Comm'r of

Soc. Sec.*, No. 2:15-cv-00910, 2016 WL 3519319, at *5 (E.D. Cal. June 28, 2016) (holding that

the ALJ reasonably discounted a physician's opinion as to physical limitations and noting that "[c]uriously, despite . . . the fact that [the physician] had only treated [the] plaintiff for about two months, he nonetheless opined that [the] assessed limitations began [three-and-a-half years] prior").

In her reply brief, Plaintiff references but does not challenge an additional inconsistency that the ALJ identified in the decision: Dr. Pierce's opinions that Plaintiff is capable of performing low stress work, while also advising that she would be off task for at least twenty percent of an eight-hour workday and miss work at a rate that would preclude gainful employment. (*See* Pl.'s Reply at 4-5, ECF No. 18; *see also* Tr. 20, 582, 693, describing the ALJ's findings and Dr. Pierce's opinions). Plaintiff also addresses and "agrees" with the Commissioner's argument that there is an "inconsistency in the reaching opinion[s] from Dr. Pierce." (Pl.'s Reply at 4-5.) Plaintiff acknowledges that Dr. Pierce initially opined that Plaintiff could reach overhead or in front of her body for no more than five percent of the time during an eight-hour workday, and claims that Dr. Pierce "did not respond to the question regarding reaching" in her second physical medical source statement. (*See id.* at 5, citing Tr. 581, 692.) Plaintiff, however, argues that "this is not the [type of] 'consistency' [than an] ALJ is required to examine" under the new regulations. (*Id.*)

Contrary to Plaintiff's argument, Dr. Pierce responded to the reaching question in her second physical medical source statement. Dr. Pierce answered "[n]o" with respect to whether Plaintiff has "significant limitations with reaching, handling or fingering," and therefore did not provide opinions as to the percentage of time Plaintiff can use her hands, fingers, and arms during an eight-hour workday. (*See* Tr. 692, conditioning the percentage estimates on an answer of "yes" to the initial question as to the presence of significant reaching, handling, or fingering

PAGE 15 – OPINION AND ORDER

limitations). By contrast, in the first medical source statement she issued less than a year earlier, Dr. Pierce answered "[y]es" to that initial question and in turn estimated that Plaintiff could reach overhead or in front of her body for no more than five percent of an eight-hour workday, and grasp, turn, and twist objects for no more than fifty percent of an eight-hour workday. (*Id.* at 581.)

The authorities and observations above demonstrate that it was reasonable for the ALJ to discount Dr. Pierce's opinions based on internal inconsistencies or inconsistencies with her own findings. The vastly different August 2020 and May 2021 opinions as to Plaintiff's reaching and handling limitations provide further support for the ALJ's decision to discount Dr. Pierce's opinions. *See Fenton v. Colvin*, No. 6:14-cv-00350-SI, 2015 WL 3464072, at *1 (D. Or. June 1, 2015) ("The Court is not permitted to affirm the Commissioner on a ground upon which the Commissioner did not rely, but the Court is permitted to consider additional support for a ground on which the ALJ relied." (citing *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1005 n.3 (9th Cir. 2006))). The ALJ suggested that the five percent reaching opinion was "extreme" and lacked support (*see* Tr. 20), Plaintiff agrees that Dr. Pierce offered conflicting opinions, and it does not appear that Dr. Pierce provided an explanation as to her differing opinions on reaching and handling.

Dr. Pierce's opinions on Plaintiff's need for unscheduled breaks also bolsters the ALJ's decision. In August 2020, Dr. Pierce opined that Plaintiff would need multiple one- to two-hour breaks during an eight-hour workday due to muscle weakness, chronic fatigue, and "[p]ain/ parethesias, numbness." (*Id.* at 580.) Less than a year later, Dr. Pierce opined that Plaintiff would need eight fifteen-minute breaks during an eight-hour workday and cited the same symptoms in

support. (*Id.* at 691.) This is a notable and unexplained difference in opinions on unscheduled breaks.

The Court also notes that the ALJ discounted Dr. Pierce's opinion that Plaintiff was "disabled from her pain" because this is "an issue reserved for the Commissioner." (*Id.* at 20, citing Tr. 662.) It was appropriate for the ALJ to do so. *See Driscoll v. Kijakazi*, No. 20-16025, 2023 WL 4858133, at *1 (9th Cir. July 31, 2023) (affirming the ALJ's discounting of a physician's opinion in part because he addressed the ultimate issue of disability, an issue reserved to the Commissioner); *Leitz v. Kijakazi*, No. 22-35356, 2023 WL 4342114, at *2 (9th Cir. July 5, 2023) ("The ALJ's rejection of [the physician's] opinion was reasonable because [the physician's] opinion included an opinion on an issue specifically reserved for the Commissioner[.]").

Finally, Plaintiff argues that if "you take out" Dr. Pierce's opinions regarding reaching limitations, the onset date of Plaintiff's symptoms and limitations, and an issue reserved to the Commissioner, Dr. Pierce's remaining opinions "still amply" support a finding of disability. (Pl.'s Reply at 5.) But that is not the question before the Court. The question before the Court is whether the ALJ provided an explanation supported by substantial evidence for discounting Dr. Pierce's opinions. *See Kitchen*, 82 F.4th at 740 (stating that "[u]nder the revised regulations, an ALJ need only provide 'an explanation supported by substantial evidence'" (quoting *Woods*, 32 F.4th at 792)). The ALJ did so, and Plaintiff fails to explain why it would be appropriate to fully credit any remaining functional opinions when the ALJ's explanation calls such opinions into question.

For these reasons, the Court concludes that the ALJ did not commit harmful error in discounting Dr. Pierce's opinions.

## II.    PLAINTIFF'S SYMPTOM TESTIMONY

Plaintiff argues that the ALJ failed to provide clear and convincing reasons, supported by substantial evidence, for discounting her symptom testimony. (Pl.'s Br. at 9-15.) The Court agrees.

### A.    Applicable Law

The Ninth Circuit has "established a two-step analysis for determining the extent to which a claimant's symptom testimony must be credited[.]" *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007)). Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if she gives specific, clear and convincing reasons for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citation omitted).

### B.    Analysis

There is no evidence of malingering here and the ALJ determined that Plaintiff provided objective medical evidence of underlying impairments which might reasonably produce the symptoms alleged. (*See* Tr. 19, the ALJ determined that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms"). The ALJ was therefore required to provide clear and convincing reasons for discounting Plaintiff's symptom testimony. *See Ghanim*, 763 F.3d at 1163. The Court finds that the ALJ failed to meet that standard here.

///

PAGE 18 – OPINION AND ORDER

### 1.    The ALJ's Decision

Before making specific findings, the ALJ made use of the following boilerplate language often included in disability determinations: "[Plaintiff's] statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision."[6] (Tr. 19.) The ALJ then noted that "since prior determinations [on Plaintiff's previous application for benefits], [the agency received] updated evidence [that] support[ed] additional limitations." (*Id.*) For example, the ALJ observed that (1) a comparison of the February 2019, October 2020, and June 2021 MRIs of Plaintiff's lumbar spine revealed, among other things, that Plaintiff's "multilevel degenerative disc disease that has been progressing," (2) Plaintiff exhibited some "abnormalities on examination," and (3) Dr. Cabalo, an orthopedic surgeon, had recently "deemed" Plaintiff to be a "surgical candidate." (*Id.*, citing, *inter alia*, Tr. 606, 671, 695, 701-02, 768, 774-75, 777.)

In the next paragraph of his decision, the ALJ stated that "[n]onetheless, [Plaintiff's] statements about the intensity, persistence, and limiting effects of . . . her symptoms are inconsistent with the record as a whole." (*Id.*) In support of this conclusion, the ALJ cited other results from Plaintiff's more recent examinations, the absence of evidence demonstrating that Plaintiff suffered from muscle "atrophy or other signs consistent with the alleged level of activity," Plaintiff's ability to babysit her one-year-old grandson for "about a month," and the

---

[6] This boilerplate language alone does not meet the Ninth Circuit's specificity requirements. *See Finney v. Kijakazi*, No. 22-15143, 2022 WL 17830000, at *1 n.1 (9th Cir. Dec. 21, 2022) ("The ALJ . . . made use of boilerplate language stating that [the plaintiff's] statements are 'not entirely consistent with the medical evidence and other evidence in the record.' This boilerplate explanation is insufficiently specific." (citing *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020))).

purported absence of evidence or testimony showing that anyone assisted Plaintiff with her daily

activities:

> While [Plaintiff] alleges an almost inability to stand or walk, she has even been
> described as presenting with a normal gait, despite use of a cane, in mid-
> 2020. . . . Even in recent examinations, any reduction in strength is mild and
> sensation is often intact even in [Plaintiff's] lower left extremity . . . . This is not
> consistent with the alleged severity of symptoms. Given [Plaintiff's] testimony
> [that she] spend[s] most of her day bedridden, it is also notable that objective
> examinations fail to show atrophy or other signs consistent with the alleged level
> of inactivity. Moreover, while [Plaintiff] alleges that she struggles with even most
> daily activities, at least in 2020, she was able to babysit her grandchildren . . . .
> While she testified that she only did this for about a month for a [one]-year-old,
> given her self-reported symptoms, babysitting a [one]-year-old baby for any
> period of time would not be possible (if, for example, [Plaintiff] was bedridden
> over [twenty] hours a day). The undersigned also notes that [Plaintiff's] husband
> works, . . . yet there is nothing in the medical evidence of record or testimony that
> [Plaintiff] had anyone coming . . . to assist her with daily activities, a result
> inconsistent with the debilitating symptoms alleged.

(*Id.* at 19-20, citing Tr. 222-33, 362, 441, 573, 606, 610, 695, 700, 708, 733, 768, 774-75, 777.)

### 2. Disposition

#### a. The ALJ's Step-Two Findings

In arguing that Plaintiff failed to demonstrate that the ALJ committed harmful error in

discounting her testimony, the Commissioner relies largely on the ALJ's step-two findings

regarding Plaintiff's carpal tunnel syndrome and mental impairments. (*See* Def.'s Br. at 4-8,

relying on the ALJ's step-two-findings and then turning to the above portion of the ALJ's

decision, i.e., Tr. 19-20, and medical records that contradicted Plaintiff's alleged level of

impairment). As explained below, the Commissioner's reliance on the ALJ's step-two findings is

misplaced here.

It is well settled than an ALJ "must '*specifically* identify the testimony [from the

claimant] she or he finds not to be credible and . . . explain what evidence undermines the

testimony.'" *Rocha v. Berryhill*, 771 F. App'x 447, 448 n.2 (9th Cir. 2019) (quoting *Treichler v.*

*Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1102 (9th Cir. 2014)); *see also Fritz v. Berryhill*, 685 F. App'x 585, 586 (9th Cir. 2017) (holding that the ALJ failed to meet the clear and convincing reasons standard and noting that the ALJ "did not explain how" certain evidence "impacted [the claimant's] credibility"). This specificity requirement is not satisfied when the Commissioner relies on general findings from "a different section than the credibility determination," or where the ALJ did not connect the findings or record evidence to the claimant's symptom testimony. *See Burrell v. Colvin*, 775 F.3d 1133, 1137-39 (9th Cir. 2014) (noting that the Commissioner found "three reasons for the adverse credibility determination, albeit dispersed in seemingly random places in the decision," rejecting the Commissioner's reliance on the ALJ's "state[ment] . . . —in passing and in a different section than the credibility determination—that [the] [c]laimant's self-reports were inconsistent in some unspecified way with her testimony at the hearing" because such a "finding [was] insufficient to meet '[the Ninth Circuit's] requirements of specificity,'" as well as the Commissioner's reliance on the medical record because the ALJ "never connected the medical record to [the] [c]laimant's testimony" and "never stated that he rested his adverse credibility determination on those findings") (citation omitted).

The district court's decision in *Cohoon v. Astrue*, No. 10-cv-01219-HZ, 2011 WL 3841568, at *6 (D. Or. Aug. 30, 2011), is instructive. In that case, the Commissioner argued that the ALJ did not err in discounting the claimant's testimony and, in doing so, relied on findings that the ALJ made at step two of the sequential process. *Id.* The *Cohoon* court found "several problems with this argument." *Id.* The *Cohoon* court emphasized that the ALJ's findings were "not part of the subsequent assessment of plaintiff's credibility which is done as part of arriving at an RFC," noting that the "'Paragraph B' criteria of listed mental impairments are used to 'rate

the severity of mental impairments at steps [two] and [three]' and are distinct from the mental

RFC assessment which occurs at steps four and five." *Id.* (citation omitted). The *Cohoon* court

also emphasized that the Commissioner's argument was not "advanced by the ALJ for rejecting

plaintiff's testimony and so, [it] may not be considered." *Id.* at *7 (citing *Bray*, 554 F.3d at 1225-

26)); *see also Bray*, 554 F.3d at 1225-26 ("Long-standing principles of administrative law

require us to review the ALJ's decision based on the reasoning and factual findings offered by

the ALJ—not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been

thinking."). Accordingly, the *Cohoon* court determined that the ALJ's step-two finding was not a

clear and convincing reason for discounting the claimant's symptom testimony. 2011 WL

3841568, at *8.

Like *Cohoon*, the ALJ here did not connect his step-two findings regarding carpal tunnel

syndrome to Plaintiff's symptom testimony, and otherwise focused on the paragraph B criteria

for listed mental impairments, which, as discussed above, are distinct from an RFC assessment

and the related subjective symptom analysis. (*See* Tr. 17, 19-20, reflecting that the ALJ stated

that Plaintiff's carpal tunnel syndrome was non-severe and "mentioned only very rarely, and

generally in generic problem lists, and thus the record does not support any resulting

limitations," proceeded to the paragraph B criteria, found "no limitation" in the four functional

areas, stated that Plaintiff "alleged mental symptoms at the hearing, [but] the record does not

support significant limitation, and the severity of her alleged symptoms are inconsistent with her

failure to seek treatment and mental status examinations that consistently fail to suggest any

notable limitations or abnormalities," and added that the paragraph B criteria "are not a [RFC]

assessment but are used to rate the severity of mental impairments at steps [two] and [three]"; *see*

*also* Def.'s Br. at 4-8, relying on the ALJ's step-two findings before turning to the relevant

portion of the ALJ's decision and records that allegedly contradicted Plaintiff's alleged level of impairment).

Additionally, the ALJ brought up Plaintiff's depression and anxiety during the hearing, and Plaintiff simply responded to the ALJ's follow-up questions. (*See* Tr. at 47-48, "[L]et me ask you this, I know that the file really talks about depression and anxiety. Are you currently on any kind of medication? A. No."; *see also id.* at 39-40, showing that the ALJ and Plaintiff focused initially on Plaintiff's back problems, which have been persistent and "gotten severely worse," and upcoming surgery). Furthermore, Plaintiff did not allege that she was disabled because of carpal tunnel syndrome or mental impairments, and the record reflects that Plaintiff's mental health complaints were situational and/or related to her back problems and pain. (*See id.* at 85, 96, 250, reflecting that Plaintiff identified chronic pain, lower back pain, and hip issues as her allegedly disabling impairments and "the physical or mental conditions (including emotional . . . problems) that limit [her] ability to work"; *id.* at 361-63, February 19, 2020, Dr. Pierce referred to Plaintiff's "[r]eactive" and "situational" depression and stated that Plaintiff's depressive symptoms were "likely largely related to her chronic pain, for which [Plaintiff] feels she has not been able to get much relief and feels she has not necessarily been listened to in the past"; *id.* at 387-91, September 6 and September 19, 2019, Plaintiff's grandson spent time in the neonatal intensive care unit and Plaintiff reported suffering from "high" and "severe" anxiety and "numerous ups and downs [with] her moods" and that "every time her daughter calls her, she is afraid that [her grandson] may have died, and she has a panic attack";

*id.* at 360, May 29, 2015, Plaintiff was "[p]laced on Cymbalta for depression, should also benefit neuropathic pain").[7]

Given these facts and authorities, the Court rejects the Commissioner's argument that the ALJ's step-two findings served as a specific, clear, and convincing reason for discounting Plaintiff's symptom testimony. *See Adeena W. v. Saul*, No. 6:19-cv-00051-SB, 2020 WL 2992191, at *4 (D. Or. June 4, 2020) (relying on *Cohoon* and rejecting "the Commissioner's argument that the ALJ's step-two findings served as a specific, clear, and convincing reason for discounting [the plaintiff's] symptom testimony" (citing, *inter alia*, *Burrell*, 775 F.3d at 1138-39)); *see also Burrell*, 775 F.3d at 1138-39 ("Although the ALJ made findings—discussed below—concerning [the] [c]laimant's treatment for headaches, he never stated that he rested his adverse credibility determination on those findings. For that reason alone, we reject the government's argument that the history of treatment for headaches is a specific, clear, and convincing reason to support the credibility finding."); *Gardner v. Colvin*, No. 13-01272, 2014 WL 255621, at *4 (C.D. Cal. Jan. 23, 2014) ("The ALJ identified the foregoing mild limitation in plaintiff's mental abilities when considering the 'paragraph B criteria' used to determine the severity of plaintiff's mental impairments at step two—not when evaluating plaintiff's credibility in connection with the ALJ's [RFC] assessment at step four. This Court may not affirm the ALJ's credibility determination based on reasons not articulated by the ALJ.") (citations omitted).

### b.    The ALJ's Other Reasons

The Commissioner's remaining argument is that the ALJ did not commit harmful error in discounting Plaintiff's symptom testimony because the "medical record contradicted the level of

---

[7] "Reactive depression is generally a transient condition precipitated by a stressful life event or other environmental factor." *Wall v. Astrue*, 561 F.3d 1048, 1054 n.4 (10th Cir. 2009) (citation omitted).

limitation Plaintiff endorsed." (*See* Def.'s Br. at 6-8, devoting a portion of the brief to this argument and noting that "[c]ontradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony") (citation and bold omitted). Plaintiff responds that the "[t]hree of the [ALJ's] five reasons . . . for rejecting [her] pain complaints were lack of objective evidence," and the Commissioner "did not attempt to refute" her arguments regarding the ALJ's "other reasons" (i.e., the report about her babysitting her grandson for about a month and the purported lack of evidence that she received assistance with her daily activities). (Pl.'s Reply at 2, 4.)

The Court agrees with Plaintiff that the ALJ committed harmful error in discounting her testimony.[8] The ALJ's step-two findings were not a clear and convincing reason for discounting Plaintiff's symptom testimony, and the lack of supporting or inconsistent objective medical evidence cannot provide the sole basis for discounting a claimant's testimony. *See McClaren v. Saul*, 812 F. App'x 500, 501 (9th Cir. 2020) (explaining that "inconsistencies with objective medical evidence . . . cannot provide the sole basis for an ALJ's credibility determination"); *Valdez v. Berryhill*, 746 F. App'x 676, 677 (9th Cir. 2018) (noting that "an ALJ may properly include lack of supporting medical evidence in the reasons to discredit claimant testimony as long as it is not the only reason" (citing *Burch*, 400 F.3d at 680)); *Taylor v. Berryhill*, 720 F. App'x 906, 907 (9th Cir. 2018) (observing that the claimant suffered from mental and physical impairments and explaining that even "[a]ssuming that [the claimant's] testimony regarding her physical impairments was not supported by the objective medical evidence, the ALJ cannot

---

[8] The Commissioner suggests that her argument that the ALJ did not commit harmful error depends on the ALJ's step-two findings. (*See* Def.'s at 4-6, arguing that Plaintiff did not challenge and thus waived any argument as to the ALJ's step-two findings, which is "fatal to Plaintiff's claim that the ALJ harmfully erred by not fully crediting her extreme symptom allegations").

properly rely on that as the sole reason to discredit her testimony" (citing *Burch*, 400 F.3d at 681)). Accordingly, the Court concludes that the ALJ committed harmful error.

The Court also notes that the record includes notable objective evidence that supports Plaintiff's testimony. For example, an October 9, 2020 MRI of Plaintiff's lumbar spine revealed: (1) "[m]ultilevel degenerative changes . . . most notably at the L2-L3 level, progressed since [Plaintiff's] previous MRI from 2019," which was "secondary to the presence of a prominent caudally migrating [d]isc extrusion in the left subarticular recess and demonstra[ble] mass effect on the descending left L3 nerve," (2) "[m]oderate left neural foraminal stenosis," and (3) "[d]egenerative changes at [the] remaining levels of the lumbar spine[.]" (Tr. 606.) About two months later, on December 1, 2020, Plaintiff presented for a follow-up orthopedic consultation. (*Id.* at 698-701.) Dr. Cabalo stated that Plaintiff continued to suffer from "back pain and left leg pain," that he believed that Plaintiff's symptoms were "due to the L2-3 herniation on the left," that Plaintiff had "failed conservative management" and thus was "a surgical candidate" for "a [l]eft L2-3 [l]aminotomy and [m]icrodiscectomy," and that Plaintiff wanted to "proceed with surgery." (*Id.* at 701.) The next year, on June 11, 2021, Plaintiff presented for an updated MRI of her lumbar spine, and the radiologist made the following observation: "Of note, the disc bulge likely impinge[d] upon [Plaintiff's] adjacent traversing left L3 nerve root." (*Id.* at 777.)

In addition, and as the Commissioner's lack of a response suggests (*compare* Pl.'s Br. at 14-15, *with* Def.'s Br. at 4-8), substantial evidence does not support the ALJ's reliance on Plaintiff's report of babysitting or purported lack of assistance. (*See* Tr. 20.) As to assistance, the ALJ emphasized that Plaintiff's "husband works" and cited a 2018 tax return in support, and stated that "there is nothing in the medical evidence of record or testimony that [Plaintiff] had

anyone coming . . . to assist her with daily activities, a result inconsistent with the debilitating symptoms alleged." (*See id.*, stating as much and citing Tr. 222-33, a "2018 Tax Return"; *see also id.* at 438, 442, May 5 and May 6, 2020, noting that Plaintiff's husband was "working currently"). Contrary to the ALJ's finding, the record evidence reflects that Plaintiff's husband and daughter assist Plaintiff with her activities of daily living, and there does not appear to be any meaningful inconsistency between Plaintiff's symptom testimony and the reported level of assistance.

For example, during the hearing, Plaintiff testified that her husband "helps" her shop for groceries, her husband "is mainly doing it" in terms of loading the cart and putting away the groceries, she has difficulty with household chores and needs to "stop and start" and take more time to complete such tasks, and she could work for a total of "[m]aybe two" hours. (*Id.* at 49-50.) Plaintiff also answered "[y]es" to the ALJ's questions about whether she spends "all except maybe two or three" hours each day or "[twenty-one] to [twenty-two] hours" lying in bed and whether on "a typical day [Plaintiff is] basically . . . staying in bed most of the day." (*Id.* at 50-53.)

Before the hearing, Plaintiff made similar reports about her symptoms, limitations, and need for assistance from her husband or daughter. (*See id.* at 491, September 23, 2019, Plaintiff reported that "her husband [was] doing everything" because she had not "got any sleep all weekend," could not "get out of bed," and had "trouble walking"; *id.* at 272-79, March 30, 2020, Plaintiff reported that she cannot stand for a "long time" and "some days not at all," she moves from her "bed to [her] chair all day [and] all night," her "husband takes care of [her]" and "do[es] everything" in terms of house and yard work, she did not have "family [available] to help" with transportation, she suffers from back and hip "pain all day and night," she cannot

"walk hardly," she "might go with [her] husband once a month" to shop for groceries but "it take[s] hours" because she "walk[s] slow and use[s] a ca[ne] or cart," and she can walk "not that far" before she needs to stop and rest and it "depends" how long she would need to rest before she resumed walking; *id.* at 308-13, August 13, 2020, Plaintiff reported that she cannot walk for a long time or "stand in one place" because of hip and back pain, she goes "from [her] bed to [her] couch to [her] chair try[ing] to get sleep" but suffers from pain because of the "narrowing of the nerves" in her back, she is "up all night going from laying on [her] back to [her] left, then right hip to sitting up all night over and over," her husband assists with some personal care activities, her husband and daughter help with house and yard work, she goes "from bed to chair to couch and every once and a while . . . will go to the grocery store with [her] husband" but she is in "pain [and] it takes a long time," if she walks and needs to stop and rest, she cannot resume walking for at least fifteen minutes, and she uses a cane "all the time for balance"; *id.* at 632, August 28, 2020, discharging Plaintiff and referring to Plaintiff's husband as her "attending caregiver"; *see also id.* at 366, 394, 398, 468, 502, 622, 674, May 4, 2019, August 27, 2019, February 19, 2020, June 9, 2020, and August 27, 2020, repeating that "[Plaintiff] lives with her husband and daughter"; *id.* at 661, August 26, 2020, showing that Plaintiff reported that her "[d]aughter moved back in [with] her recently, [and] she 'overdid it' in terms of using her back, moving").

Given this record, substantial evidence does not support the ALJ's finding that the record failed to reflect that Plaintiff received any assistance with her activities, and there does not appear to be any meaningful inconsistency between Plaintiff's testimony and reported level of assistance.

///

PAGE 28 – OPINION AND ORDER

Finally, substantial evidence does not support the ALJ's discounting of Plaintiff's testimony based on the report about babysitting her grandson, and the Commissioner does not suggest otherwise. The record includes one report about Plaintiff and Plaintiff's husband babysitting their grandchildren. (*See id.* at 610, October 1, 2020, "[Plaintiff] lives with her husband of [thirty] years. . . . The two of them are babysitters for their grandchildren."; *see also id.* at 20, reflecting that the ALJ cited and relied on Tr. 610). The record, however, also reflects that Plaintiff reported that she could work two hours a day, she cannot hold her grandson unless she is sitting down, and the babysitting lasted for "[m]aybe a month" and "about two hours a day" but she "couldn't do it so [she] just stopped." (*See id.* at 50, 53, June 21, 2021, Plaintiff testified about the report in the record that she and her husband babysat their one-year-old grandson; *id.* at 276, March 30, 2020, Plaintiff reported that she sees her grandson "once a month" and cannot hold him unless she is "sitting down" and "then [she has] to give him back to his mom").

### 3.    Conclusion

For these reasons, the Court finds that the ALJ committed harmful error in discounting Plaintiff's testimony.

## III.    REMEDY

The record before the Court includes inconsistencies and conflicts that the ALJ must resolve. The Court therefore exercises its discretion to remand this case for further proceedings consistent with this opinion. *See Kurt H. v. Saul*, No. 6:19-cv-01987-SI, 2021 WL 1187055, at *8 (D. Or. Mar. 29, 2021) ("Because the Court finds that the record contains gaps, inconsistencies, and ambiguities, . . . the Court need not determine whether, if the improperly rejected testimony were credited as true, the ALJ would be required to find that Plaintiff is

disabled. The Court declines to remand for award of benefits and instead remands for further proceedings.").

## CONCLUSION

For the reasons stated, the Court REVERSES the Commissioner's decision and REMANDS this case for further proceedings consistent with this opinion.

**IT IS SO ORDERED.**

DATED this 23rd day of October, 2023.

HON. STACIE F. BECKERMAN
United States Magistrate Judge